U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 1 2 2008

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DENNIS A. MITCHELL,<br>　　PLAINTIFF<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　DEFENDANT. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:07-CV-561-A<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.　STATEMENT OF THE CASE

Plaintiff Dennis A. Mitchell filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. Mitchell applied for disability insurance and SSI benefits on March 22, 2005, alleging disability beginning November 15, 2004. (Tr. 63, 180). Mitchell remained insured for purposes of disability insurance benefits through September 2007. (Tr. 61).

The Social Security Administration denied Mitchell's applications for benefits initially and on reconsideration. Mitchell requested a hearing before an administrative law judge (the "ALJ"), and ALJ J. Frederick Gatzke held a hearing on November 28, 2006, in Fort Worth, Texas. (Tr. 185). Mitchell was represented by counsel. On January 26, 2007, the ALJ issued a decision that Mitchell was not disabled and was not entitled to disability or SSI benefits because he retained the ability to perform a modified range of light work,[1] including his past relevant work. (Tr. 16-23). The Appeals Council denied Mitchell's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985),

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

*cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this burden, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198.

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUE

Mitchell challenges the assessment of his residual functional capacity as inconsistent with relevant legal standards and unsupported by substantial evidence.

D.  ADMINISTRATIVE RECORD

1.  Treatment History

The record includes the following information about Mitchell's medical history:

Mitchell complained of knee pain and low back pain while working in 2003. (Tr. 102-05). X-rays of both knees showed advanced osteoarthritis with severe narrowing and degenerative osteophyte formations, with the worse change in his left knee. (Tr. 111). Mitchell was terminated from his job in 2004 for being too slow. (Tr. 132).

In February 2005, Mitchell went to the emergency room with complaints of back pain that radiated into his right leg. Pain relievers were administered, and Mitchell was discharged from the emergency room in stable condition. (Tr. 117-20). On February 16, 2005, Mitchell's primary care physician, James Guinn, M.D., ordered magnetic resonance imaging (an MRI), which revealed spondylosis[2] and bilateral neural foraminal narrowing along Mitchell's lumbar spine, with a small disc protrusion at L3-L4. (Tr. 122-23). Guinn completed a disability statement in April 2005[3] in which he found that Mitchell was restricted to sedentary activities with a weight-lifting limit of ten pounds for no more than one hour per day. Guinn opined that Mitchell was permanently disabled

---

[2] Spondylosis refers to degenerative spinal changes as a result of osteoarthritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1780 (31st ed. 2007).

[3] The form is dated both 2004 and 2005, (Tr. 113-14), but Mitchell's alleged onset date is November 15, 2004, and he was still working in April 2004. (Tr. 70).

because of impairments of his cervical and lumbar spine. (Tr. 113-14). Guinn referred Mitchell to neurologist Charles Marable, M.D., for further treatment. (Tr. 148).

Marable reviewed the MRI report and diagnosed stenosis at L3-L4 and L4-L5, with a herniated disc at L5-S1. Marable prescribed medication and referred Mitchell to a neurosurgeon for further assessment. (Tr. 146). Marable also ordered a cervical-spine MRI to evaluate Mitchell's complaints of neck pain. The MRI was performed May 31, 2005, and showed a suspect 2-3 mm disc protrusion that contacted, but did not indent, the spinal cord. (Tr. 145).

On June 3, 2005, Mitchell underwent a consultative evaluation with William Bosworth, M.D. (Tr. 124). Mitchell reported that he had surgery on both hands for carpal tunnel syndrome, which had been effective, but he continued to experience occasional burning, tingling or weakness in his right hand. He injured his left knee in 1974, which required surgery. He injured his right knee in 1985 or 1986 and had surgery on that knee as well. (Tr. 124). Mitchell sustained a work-related back injury in 1991, and since that time, has had low back pain that radiates into his right leg. He also complained of discomfort and a burning sensation at the base of his neck. Mitchell estimated that he could walk two or three blocks, stand for three hours, and sit as required, but occasionally used a cane for balance and support. Mitchell prepared his own meals, went grocery shopping with the use of an electric shopping cart, and did his own housework. (Tr. 125).

On examination, no abnormalities were noted in Mitchell's gait, station, or ability to perform heel, toe or tandem walking. Mitchell was able to get on and off the examining table and move about the room readily. Fine finger movements were normal. Deep tendon reflexes were absent in his left knee and reduced on the right. Sensation was intact in all extremities. (Tr. 126). Range of

motion testing confirmed hip flexion of ninety degrees on the right and eighty degrees on the left; normal cervical range of motion; and full range of motion in Mitchell's lumbar spine. (Tr. 130). Bosworth diagnosed probable degenerative arthritis or traumatic arthritis in both knees; chronic back pain with degenerative disc disease; and cervical disc disease. (Tr .126).

Mitchell saw orthopedic surgeon Jacob Rosenstein, M.D., in June 2005 for a surgical consultation. (Tr. 132). On examination, Mitchell exhibited tenderness along his spine. Range of motion in his lumbar spine included flexion of seventy degrees, extension of ten degrees with reported back pain, and lateral bending to ten degrees bilaterally. His cervical range of motion included flexion and extension of thirty-five degrees, and rotation of forty-five degrees to the left and right. Straight leg raising was positive at sixty degrees on the right. Motor strength was 5/5 in his upper and lower extremities, sensation was intact, and his reflexes were symmetric. (Tr. 133). Rosenstein opined that the MRI of Mitchell's cervical spine was unremarkable, and disagreed with the previous interpretation of that MRI. The MRI of Mitchell's lumbar spine confirmed disc space narrowing and a central bulge or protrusion at L3-L4, L4-L5, and L5-S1, but no stenosis. Rosenstein saw nothing that would require surgery and instead recommended conservative care, including anti-inflammatory medication. Rosenstein also opined that Mitchell would be unable to perform heavy manual labor and would need to find sedentary work. (Tr .134).

Mitchell received routine medical care in 2006, and continued to complain of low back pain for which he was prescribed pain relievers. (Tr. 159-62). A lumbar MRI in August 2006 showed multi-level disc disease with central canal stenosis and a significant loss of disc height. (Tr. 155-56). Mitchell was given prescriptions for a back brace and elastic knee braces. (Tr. 157).

2. Administrative Hearing

Mitchell testified that he was fifty years old and had completed two years of college. (Tr. 188). His most recent full-time job as a truck driver ended in 2004, although he had made unsuccessful attempts to work since that date. (Tr. 188-91). He testified that fatigue and problems with his back and shoulders had caused his employer to fire him for performance issues. (Tr. 193).

Mitchell testified that he saw Marable on a monthly basis for medication and follow-up visits. Marable had recommended a consultation with a neurosurgeon, but insurance issues had prevented Mitchell from following through on that recommendation. Mitchell also saw his family physician for routine medical care. (Tr. 192-93). Mitchell testified that his knee problems were worse and complained that he was falling more frequently. (Tr. 194). He testified that he had a lot of stiffness and needle-like pain. Exercise aggravated his symptoms. (Tr. 195-96). Activities like bending and squatting were also difficult. Medication was helpful, but did not provide full relief from the pain. (Tr. 197). His medications also made him sleepy. (Tr. 198). Mitchell testified that he lived alone and could drive a car, but sometimes had his family or friends take him to the grocery store. His daily activities included reading, watching television, and drawing. (Tr. 199-200).

Medical expert O.D. Raulston testified that Mitchell's diagnoses included moderate to severe osteoarthritis in both knees, degenerative disc disease from L3-S1, cervical degenerative disc disease, and history of carpal tunnel syndrome. (Tr. 204). Raulston opined that Mitchell's impairments did not meet or equal any listing because there were no neurological deficits and imaging studies yielded minimal findings. Raulston also opined that Mitchell would be limited to lifting twenty pounds occasionally and ten pounds frequently, but could stand and walk for six hours or sit for up to six

hours in an eight-hour workday if he was able to change positions hourly. Raulston limited Mitchell to occasional climbing, crawling, crouching, balancing, kneeling, or stooping, and no overhead reaching. Raulston eliminated hazardous duties, including the use of ladders, scaffolding, ropes, and work around heavy moving machinery. (Tr. 204).

Vocational expert Todd Harden testified that Mitchell had previous work experience as a flatbed truck driver and sheet metal worker, which were semi-skilled jobs requiring medium exertion; security guard, which was a semi-skilled job requiring light exertion; maintenance worker, which was skilled work requiring heavy exertion; furniture assembler, which was unskilled work requiring medium exertion; restaurant manager in the fast food industry, which was skilled work requiring light exertion; and fast food worker, which was an unskilled job requiring light exertion. (Tr. 209-11). Harden testified that Mitchell had acquired transferable work skills, including customer service, cash handling, basic management, and basic accounting. (Tr. 211). The ALJ asked Harden to consider an individual limited to light work that permitted changes in position on an hourly basis, no overhead reaching, no working at heights or around dangerous machinery, and no more than occasional crawling, climbing, balancing, stooping, and kneeling. Harden testified that an individual with these limitations could perform Mitchell's previous work as a security guard or fast food manager. (Tr. 212).

3. ALJ Decision

The ALJ found that Mitchell had not engaged in substantial gainful activity since his alleged disability onset date and that he had multiple severe medical impairments, including osteoarthritis in his knees; neck pain; low back pain; spondylosis; a lumbar disc protrusion; and a history of

bilateral carpal tunnel release. The ALJ found no impairment or impairments meeting or equaling the criteria of any listed impairment, and decided that Mitchell was capable of performing light work that permitted an hourly change in position; no overhead reaching; no work involving heights or dangerous moving machinery; and no more than occasional crawling, climbing, balancing, kneeling, and stooping. (Tr. 22). The ALJ further found that Mitchell's past relevant work as a security guard and a fast food manager did not require the performance of work activities that exceeded his residual functional capacity. (Tr. 22). Accordingly, the ALJ found Mitchell was not disabled and was not entitled to either disability insurance benefits or SSI. payments. (Tr. 23).

E. DISCUSSION

Mitchell challenges the assessment of his residual functional capacity (RFC) as both legally erroneous and unsupported by substantial evidence. He asserts that the ALJ erred in two respects: First, by providing an inadequate discussion of Mitchell's credibility, and second, by failing to weigh the medical opinions of record in accordance with the regulations and governing case law. Mitchell also complains that the requirements of light work are not compatible with the limitations imposed by his impairments.

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SOCIAL SECURITY RULING 96-7p. Once the impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). Factors to consider include the claimant's daily activities; the location, duration,

frequency and intensity of the pain; precipitating and aggravating factors; the medication used to alleviate the pain; other treatment measures; and other relevant factors. 20 C.F.R. §§ 404.1529(c), 416.929(c). A claimant's statements as to pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A).

Mitchell complains that the ALJ's credibility determination does not give explicit consideration to the relevant factors enumerated in the regulations and rulings, which violates an administrative requirement that the adjudicator provide sufficiently specific reasons for the credibility finding to ensure a full and fair review of the claim and a well-reasoned determination. SOCIAL SECURITY RULING 96-7p. Social Security Rulings are published under authority of the Commissioner and are binding on the Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per curiam). If the agency violates its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

The ALJ cited the appropriate law, recognized his duty to consider Mitchell's subjective allegations, and outlined Mitchell's complaints and testimony, (Tr. 20-21), but ultimately found that Mitchell's statements were not substantiated by the medical evidence at least insofar as Mitchell claimed to be disabled. (Tr. 22). The ALJ acknowledged that Mitchell might experience some pain or discomfort, especially with overexertion, but noted that not all pain is incompatible with the performance of work-related activities. (Tr. 21). *See Rodriguez v. Bowen*, 857 F.2d 275, 278 (5th Cir. 1988)(observing that not all pain is disabling). Relying on the objective evidence and Mitchell's

testimony, the ALJ found that Mitchell's level of functioning was not so impaired as to preclude a modified range of light work, and Mitchell has not demonstrated that this finding was not grounded in the evidence. (Tr. 21). *See* SOCIAL SECURITY RULING 96-7p. The ALJ did not expressly weigh the credibility factors outlined in the regulations and rulings, but the ALJ's summary of Mitchell's testimony and medical history reflects that he reviewed evidence that was relevant to all of the credibility factors, including Mitchell's daily activities, symptoms, precipitating and aggravating factors, medications, and other treatment measures. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir.1994)(declining to prescribe formalistic rules for the ALJ to follow in explaining credibility assessment). Mitchell has not addressed any of these factors as they relate to his subjective complaints or otherwise demonstrated that further discussion was necessary to ensure the full and fair review of his case. *See Hall*, 660 F.2d at 119 (requiring a showing of prejudice as a result of alleged violation of administrative procedural requirements).

As written, the ALJ's decision enables the court to understand why the ALJ placed little weight on Mitchell's subjective claims of disability, and that credibility determination is supported by substantial evidence. Mitchell would have preferred a more detailed discussion, but has not demonstrated that the ALJ's failure to discuss the weight assigned to individual credibility factors was either erroneous or prejudicial.

Mitchell also complains that the ALJ gave insufficient consideration to the competing medical opinions, which were provided by a treating physician, an examining specialist, and a non-examining medical expert. Mitchell notes that treating source opinions are entitled to the most deference and complains of the ALJ's failure to afford sufficient weight to Guinn's assessment.

Medical source statements are opinions from physicians, psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite those impairments; and the claimant's physical or mental restrictions. 20 C.F.R. §§ 404.1527(a), 416.927(a); SOCIAL SECURITY RULING 96-5p. Medical source statements should be weighed under the rules set out in the regulations, and the ALJ must provide appropriate explanations for accepting or rejecting the opinions. SOCIAL SECURITY RULING 96-5p. *See generally* 20 C.F.R. §§ 404.1527, 416.927. Relevant factors to be considered include the length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-2p, 96-5p.

In addition, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The Commissioner assigns controlling weight to the opinion of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527, 416.927; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding

statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *See* 20 C.F.R.. §§ 404.1527(e), 416.927(e); *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237.

The ALJ considered Guinn's opinion, which limited Mitchell to less than sedentary work, but found that great weight could not be given to the opinion because the record contained no treatment notes from Guinn to substantiate his opinion. (Tr. 17). Mitchell does not dispute the lack of treatment records from Guinn. Instead, he asserts that the ALJ's explanation is invalid because Guinn referred him to other physicians for care; however, the fact that Guinn had such limited contact with Mitchell appears to support rather than weaken the ALJ's reasoning.

Mitchell also complains of the ALJ's failure to identify the weight given to Rosenstein's opinion. The ALJ summarized Rosenstein's report and opinion that Mitchell needed to find sedentary work, but did not provide a detailed analysis of that opinion or specify whether Rosenstein's opinion was being adopted or rejected. Tr. 19).

Although a treating source's medical opinions are accorded great weight, opinions concerning issues reserved to the Commissioner in his five step analysis, including the assessment of a claimant's RFC, are not considered medical opinions and are neither controlling nor accorded special significance. 20 C.F.R. §§ 404.1527(e), 416.927(e); SOCIAL SECURITY RULING 96-5p. Moreover, Rosenstein did not complete a functional capacity assessment to compare Mitchell's functioning with the demands of any particular exertional level, so it is unclear that his reference to sedentary work was used as that term is defined for purposes of the Social Security Act. *See* SOCIAL SECURITY RULING 96-5p (noting that adjudicator must not assume that medical source who uses

terms like "sedentary" or "light" is aware of the agency's specialized definition for those terms). *See generally* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining sedentary work). Rosenstein's objective reports contain minimal positive findings and a recommendation for conservative treatment, and Bosworth's consultative evaluation produced similar findings. It is this overall lack of significant objective findings that led the testifying medical expert to opine that Mitchell was capable of a restricted range of light work. (Tr. 204-06).

Mitchell has not demonstrated that Rosenstein's opinion that he is unable to perform heavy manual labor and needs to find sedentary work is incompatible with the ALJ's determination that he is capable of a modified range of light work (as defined in the disability regulations) that allows for hourly changes in position and involves no overhead reaching, no work at heights or near dangerous machinery, and only occasional crawling, climbing, balancing, kneeling and stooping. Mitchell has not established that the ALJ rejected the treating source's medical opinion or that the failure to provide a detailed analysis of the weight afforded to Rosenstein's opinion resulted in prejudice that would require the court to disturb the Commissioner's decision.

Mitchell's related argument that severe osteoarthritis, neck pain, and back pain would preclude the performance of light work is unsupported. RFC represents the most that an individual can still do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); SOCIAL SECURITY RULING 96-8p. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SOCIAL SECURITY RULING 96-8p; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The ALJ found that Mitchell, despite his severe impairments, retained the capacity for a modified range of light work, and that determination is

supported by the medical evidence and other evidence in the record. The ALJ also elicited testimony from the vocational expert that an individual with Mitchell's RFC would be capable of performing his past relevant work as a security guard or fast food manager.

The Commissioner's decision is supported by substantial evidence and has not been shown to be a product of legal error.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until October 3, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29

(5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until October 3, 2008 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED September 12, 2008.

_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE